**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

(1) LESLIE HANNAN, an Individual;

Plaintiff,

v.

(1) CITY OF TULSA, a Municipal Corporation;

(2) WENDELL FRANKLIN, in his Individual Capacity as former Chief of the Tulsa Police Department;

(3) JAKE HUFF,

(4) MADELYN SWEGER,

(5) DENZIL AUSTIN BERRYMAN,

Defendants.

Case No. 25-cv-00298-SEH-MTS

**JOINT STATUS REPORT**

**Jury Demanded**: Yes ☒ No ☐

**I. Summary of Claims**:

PLAINTIFF'S CLAIMS:

On June 19, 2023, Denzil Berryman began physically assaulting Leslie Hannan, when he saw gummy bear candies that he believed had been given to Ms. Hannan by another man. At one point, Mr. Berryman shoved the gummy bears down Ms. Hannan's throat and threatened to throw her cat off a 17-story balcony. Ms. Hannan contacted 9-1-1 and reported the domestic violence and requested that Mr. Berryman be removed from the premises. Tulsa Police Department ("TPD") officers Jared Hugg and Madelyn Sweger responded to Ms. Hannan's apartment complex. In contravention of a city-wide nepotism policy, Mr. Huff and Ms. Sweger were in an interpersonal, undisclosed romantic relationship with one another and should not have been on-duty with one another in that capacity.

At the time Mr. Huff and Ms. Sweger initially responded to Ms. Hannan's call, neither turned on their body-worn cameras, also in contravention of TPD policy. Ms. Hannan has visible physical injuries and informed both officers of the domestic violence; however, neither Mr. Huff nor Ms. Sweger followed various provisions of TPD's domestic violence policy, including completing a domestic violence interview, giving Ms. Hannan a victim's rights car, performing a lethality assessment, etc. Ms. Hannan consistently requested that Mr. Berryman be removed from the premises; however, Mr. Berryman indicated that he would only leave once his cellphone was returned to him. TPD then directed Ms. Hannan to return to her apartment upstairs, alone, to look for the cellphone, while both officers remained downstairs with Mr. Berryman. At some point, Ms. Sweger turned her body-worn camera on; however, Mr. Huff never followed suit. While Ms. Hannan was alone upstairs, Mr. Berryman's cellphone ran in the presence of both officers, reflecting that the phone had been on Berryman the entire time. At this point, Mr. Huff and Ms. Sweger abandoned Ms.

Hannan, leaving the apartment building without telling Ms. Hannan anything and without escorting Mr. Berryman from the premises.

When Ms. Hannan could not find the phone, she returned downstairs to find the TPD officers gone and Mr. Berryman still there. Because of extreme storm's the locking mechanisms to Ms. Hannan's apartment building were not operable and she had no means of precluding Mr. Berryman entry to the building or her apartment. Because TPD had abandoned her and left her abuser on the premises, despite her consistent requests to the contrary, Mr. Berryman followed Ms. Hannan back up to her apartment. Once inside her apartment, Mr. Berryman immediately began physically assaulting Ms. Hannan. At one point, Mr. Berryman forced Ms. Hannan onto the bed and choked her on her back to the point of unconsciousness. When Ms. Hannan regained consciousness, she found herself repositioned on the bed, with Mr. Berryman inside of her, violently raping her. At one point, Mr. Berryman fell asleep next to Ms. Hannan, who was too afraid for her safety to attempt escape.

The next day, Mr. Berryman attempted to force Ms. Hannan to leave the apartment building with him; however, he became alarmed when a neighbor observed his continued assaults on Ms. Hannan. At that point, he fled the building. Thereafter, Ms. Hannan was able to obtain a Sexual Assault Nurse Examiner ("SANE") exam and received medical treatment for the strangulation.

Mr. Berryman was convicted of aggravated sexual assault and assault of an intimate partner by strangulation in *United States of America v. Denzil Austin Berryman*, 23-CR-364-SEH (N.D. Okla.). On August 21, 2025, Mr. Berryman was sentenced to 210 months in federal prison.

The defendants deny all allegations and deny that Plaintiff can establish causation.

A. Claims to be Dismissed: None

**II. Summary of Defenses**:

**<u>Defendant City of Tulsa:</u>**

1. Plaintiff fails to state a claim upon which relief may be granted
2. Plaintiff's constitutional rights were not violated.
3. The City's actions or inactions did not proximately cause plaintiff's damages.
4. The City did not act with the requisite state of mind required to establish the alleged constitutional violation.
5. The City's policies were lawful on their face, and Plaintiff cannot prove that the City had notice of its alleged failure to act, awareness that the failure to act resulted in a constitutional deprivation and that the City consciously chose to disregard the harm.
6. The City denies there is any direct causal link which supports Plaintiff's claims that any policy or custom, or the alleged failure of the City to adopt a policy or custom, or to adequately train or supervise Defendants Huff and Sweger was the direct cause of any damage to Plaintiff.
7. The City did not have actual or constructive notice that their actions or failures to act were substantially certain to result in a violation of Plaintiff's constitutional rights, nor did the City consciously or deliberately choose to disregard any such risk of harm.
8. Absent a properly proven predicate constitutional violation by an individual defendant, the City cannot be held liable under Section 1983 for alleged failures of policy, training or supervision.
9. To the extent that any of the TPD officers' conduct violated Plaintiff's federal constitutional rights, the City did not acquiesce, accept, endorse, or act in a manner that is inconsistent with its obligations to the City of Tulsa and in violation of Plaintiff's constitutional rights.
10. To the extent that any of the TPD officers' conduct violated Plaintiff's constitutional rights, the officers were not acting within any City policy or custom.

11. To the extent that any TPD officers' conduct violated Plaintiff's constitutional rights, the City did not act or fail to act in any way that would have ratified that specific conduct or the basis for it.
12. Punitive damages are not allowed against the City of Tulsa.
13. Plaintiff's damages are barred by the doctrine of comparative negligence.
14. Plaintiff's claims are barred by the doctrine of supervening cause.

**Defendant Wendell Franklin:**

1. Plaintiff fails to state a claim upon which relief may be granted
2. Plaintiff's constitutional rights were not violated.
3. Defendant Franklin's actions or inactions did not proximately cause plaintiff's damages.
4. Defendant Franklin did not act with the requisite state of mind required to establish the alleged constitutional violation.
5. Defendant Franklin is entitled to the complete defense of Qualified Immunity.
6. Defendant Franklin denies that there is any direct causal link which supports Plaintiff's failure to train claim.
7. Defendant Franklin did not have actual or constructive notice that his actions or alleged failures to act were substantially certain to result in a violation of Plaintiff's constitutional rights, nor did the City consciously or deliberately choose to disregard any such risk of harm.
8. To the extent that any of the TPD officers' conduct violated Plaintiff's federal constitutional rights, Defendant Franklin did not acquiesce, accept, endorse, or act in a manner that is inconsistent with his obligations to the City of Tulsa and in violation of Plaintiff's constitutional rights.
9. To the extent that any TPD officers' conduct violated Plaintiff's constitutional rights, Defendant Franklin did not act or fail to act in any way that would have ratified that specific conduct or the basis for it.
10. Defendant Franklin did not fail to train or supervise Officer Huff or Officer Sweger.
11. The alleged need for further training or supervision was not so obvious to Defendant Franklin as to support liability.
12. Defendant Franklin's actions at all times were reasonable under the circumstances.
13. Defendant Franklin denies any and all allegations that his actions or inactions were the cause of any of Plaintiff's damages.
14. There is no evidence that Chief Franklin acted with any malice toward Plaintiff or acted in any way that would support Plaintiff's punitive damages claim.
15. Plaintiff's damages were caused in whole or part by third parties over whom the Defendant exercises no control.
16. Plaintiff's claims are barred by the doctrine of comparative negligence.
17. Plaintiff's claims are barred by the doctrine of supervening cause.

**Defendant Jake Huff and Defendant Madelyn Sweger:**

1. Plaintiff fails to state a claim upon which relief may be granted.
2. Plaintiff's constitutional rights were not violated.
3. Defendant Huff and Defendant Sweger are entitled to the complete defense of Qualified Immunity.
4. Defendant's actions or inactions did not proximately cause Plaintiff's injuries.
5. Plaintiff's claim are barred by the doctrine of comparative negligence.
6. Plaintiff's claims are barred by the doctrine of supervening cause.
7. Defendants did not act with malice or recklessness to support a claim for punitive damages.

**Defendant Denzil Austin Berryman:**

**A.** Defenses to be Abandoned: **None at this time**

**III. Motions Pending** (Include Docket Number, Description and Date at Issue)**: None at this time**

**IV. Stipulations:**

A. Jurisdiction Admitted: Yes ☒ No ☐ (If no, explain.)

B. Venue Appropriate: Yes ☒ No ☐ (If no, explain.)

C. Facts: On June 19, 2023, Ms. Hannan called 9-1-1.

Officer Huff and Officer Sweger responded l to Ms. Hannan's apartment complex. Officer Huff was the primary officer on the call. Officer Sweger was his backing officer.

Mr. Berryman was convicted of aggravated sexual assault and assault of an intimate partner by strangulation in *United States of America v. Denzil Austin Berryman*, 23-CR-364-SEH (N.D. Okla.).

D. Law: Federal, federal constitution, state law

**V. Proposed Deadlines:**

A. Parties to be Added by: **September 12, 2025**

B. Proposed Discovery Cutoff Date (4 Months of Discovery Unless Extended by the Court for Good Cause): **March 31, 2026.** The Parties jointly request extension beyond four months of discovery in this case, to accommodate for the trial calendars of both Parties' counsel and so as to attempt to avoid any requests for extension of four-month discovery cutoff.

C. Fact Witness Lists to be Exchanged by: **January 6, 2026**

D. Proposed Date for Expert Reports by Plaintiff and Defendant:

Plaintiffs: **January 6, 2026**

Defendants: **February 3, 2026**

**VI. Fed. R. Civ. P. 26(f) Discovery Plan**

A. Should any changes be made to the timing, form or requirements for disclosures under Rule 26(a)?
Yes ☐ (If yes, explain.)
No ☒

B. When were or will initial disclosures under Rule 26(a)(1) be made? **September 2, 2025**

Note that pursuant to Rule 26(a)(1), initial disclosures must be made within 14 days after you confer for the purpose of preparing this discovery plan. All parties are under an affirmative duty to (i) comply with the mandatory disclosure requirements, and (ii) notify the Court of any non-disclosure so that the issue can be promptly referred to a magistrate judge for resolution. Failure of any party to disclose information or failure of any party to bring disclosure issues to the Court's attention in a timely manner may result in sanctions, including prohibiting the use of that information at trial pursuant to Rule 37(c)(1).

C. Should discovery be conducted in phases and/or should discovery be limited at this time to particular subject matters or issues?
Yes ☐ (If yes, explain.)
No ☒

D. Should any changes be made in the limitations on discovery imposed by the Federal Rules of Civil Procedure or the Local Civil Rules?
Yes ☐ (If yes, explain.)
No ☒

E. Proposed Number of Fact and Expert Depositions:

1. To be allowed for Plaintiff? Ten fact witnesses and three experts

2. To be allowed for Defendant? Ten fact witnesses and three experts

F. Is there a need for any special discovery management order(s) by the Court?
Yes ☐ (If yes, explain.)
No ☒

G. The parties are directed to Guidelines for Discovery of Electronically Stored Information on the public website at www.oknd.uscourts.gov for advice on the production of electronic information.

**VII. Anticipated Dispositive Motions?**
Yes ☒ (If yes, explain.)

**Defendants anticipate filing motions for summary judgment.**

No ☐

**VIII. Do all parties consent to trial before the assigned magistrate judge?** Yes ☐ No ☒

If you mark "yes", you will be deemed to have knowingly and voluntarily consented to the jurisdiction of the assigned United States Magistrate Judge without the necessity for the filing or submission of any other documentation. The United States Magistrate Judge will exercise complete jurisdiction over this case through and including trial and the entry of a final judgment in accordance with 28 U.S.C. §636(c)(1) and Fed. R. Civ. P. 73(a).

If you mark "no" the case will immediately be reassigned to a United States District Judge.

**IX. Is there any matter that should be referred to the assigned magistrate judge for final disposition upon partial consent of all the parties pursuant to Local Rule 73.1**? Yes ☐ No ☒

If yes, please email a completed, proposed Consent to Magistrate Disposition Motion (AO 085A) to the Clerk via the designated mailbox at CM-ECFIntake_OKND@oknd.uscourts.gov. Please do not file proposed documents as an attachment to a document. (Refer to Section XIV of the CM/ECF Administrative Guide of Policies and Procedures for further instruction regarding proposed documents.)

**X. Settlement Plan** (Check one):

☒ Settlement Conference Requested After: **Dispositive motion rulings**
Describe Settlement Judge Expertise Required, If Any: § 1983 and police practices

☐ Private Mediation Scheduled On:

☐ Other ADR (Explain):

ADR Appropriate:
Yes ☐
No ☐

Copy of the Court's ADR Booklet Provided to Clients as Required?

Plaintiffs: Yes ☒ No ☐

Defendants: Yes ☒ No ☐

**XI. Does this case warrant special case management?**
Yes ☐ (If yes, explain.)
No ☒

**XII. Do the parties request that the Court hold a scheduling conference?** Yes ☐ No ☒

If a conference is not requested or ordered by the Court, the Court will, after receiving this report, issue a scheduling order based on the information contained in this report.

**XIII. Estimated Trial Time:** **4**-5 days

Attorneys for Plaintiff (Name, OBA #, Firm Name, Address, City, State, Zip, Phone, Fax, Email):

Donald E. Smolen, II, OBA #19944
John W. Warren, OBA #33635
Christopher U. Brecht, OBA #22500
SMOLEN | LAW, PLLC
611 S. Detroit Ave.
Tulsa, OK 74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
jack@smolen.law
chrisbrecht@smolen.law

Attorneys for Defendants (Name, OBA #, Firm Name, Address, City, State, Zip, Phone, Fax, Email):

T. Michelle McGrew, OBA #20279
Senior Assistant City Attorney
Komron Takmil, OBA #33282
Assistant City Attorney
City Hall, One Technology Center
175 East Second Street, Suite 685
Tulsa, Oklahoma 74103
(918) 596-7717 Telephone
(918) 596-9700 Facsimile